# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREGORY ROBINSON, JR.,      )
                               )
          Plaintiff,      )
                               )
         v.           )          1:22CV192
                               )
HONBARRIER, et al.,      )
                               )
         Defendants.     )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the undersigned on two motions: Defendants' Motion for Summary Judgment (Docket Entry 36; *see also* Docket Entry 37) and Defendants' Motion to Seal Exhibits (Docket Entry 39 ("Motion to Seal")). Plaintiff has not filed a Response in opposition to the Motion for Summary Judgment and the deadline to do so has passed (*see* Docket Entry 36). The matter is ripe for disposition. For the reasons stated herein, the undersigned recommends that the Motion for Summary Judgment should be granted and orders that the Motion to Seal is denied.

## I.    BACKGROUND

### A.  Procedural Background

Plaintiff Gregory Robinson, Jr. ("Plaintiff"), a *pro se* prisoner who at the time of filing was housed in Craggy Correctional Institute, initiated this action on March 10, 2022, (Complaint ("Compl."), Docket Entry 2) and was permitted to proceed *in forma pauperis*. (Docket Entry 4; *see also* Docket Entry 1.) Plaintiff filed the Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his Eighth Amendment rights and negligence by Defendants "Ms.

1

S. Williams" ("Williams"), "Mr. Honbarrier" ("Honbarrier"), and "Mr. Shuler" ("Shuler"). (Compl. at 2-3.)[1]  Plaintiff brings claims for violation of his "8th Amendment rights of cruel and unusual punishment" and "negligence by placing [Plaintiff] and leaving [Plaintiff] in handcuffs behind [Plaintiff's] back for more than 3.5 hours." (*Id.* at 4.)

On August 3, 2022, this Court issued an opinion in which the undersigned recommended that the instant action be dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted. (Docket Entry 4.)  Plaintiff filed a timely objection. (Docket Entry 6.)  On April 19, 2023, District Judge William Osteen issued an order partially adopting this Court's August 4, 2022, Recommendation. (Docket Entry 8.)  Therein, Judge Osteen ordered that Defendant Williams and Plaintiff's negligence claims be dismissed but otherwise declined to adopt the Recommendation, thus allowing Plaintiff's Eighth-Amendment claims against Defendants Honbarrier and Shuler to proceed. (Docket Entry 8 at 2-3.)  Plaintiff subsequently filed a "Motion for Joinder and Reimbursement of Funds" (Docket Entry 16), which was denied in a recommendation (Docket Entry 21) that was adopted by District Court Judge William Osteen (Docket Entry 27).[2]  After the close of discovery, Defendants filed the Motion for Summary Judgment (Docket Entry 36) and a Memorandum in support thereof (Docket Entry 37).  Defendants also filed sealed exhibits (Docket Entry 38) along with a Motion

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[2] Plaintiff's motion sought to consolidate the instant matter with *Robinson v. Frick*, 1:22CV28, 2024 WL 4025499, (M.D.N.C. Sep. 3, 2024) ("*Robinson* I"), where the Court ultimately recommended that Defendant's Motion for Summary Judgment arising from the October 1, 2019, incident be granted. *Id.* at *10.  Even though "[t]he underlying factual allegations for the two actions are identical[,]" the Court chose not to consolidate the cases because "given that Plaintiff has filed pro se and that the actions are at different stages of litigation, the undersigned finds that there is risk of confusion." (Docket Entry 21 at 4-5.)

to Seal Exhibits (Docket Entry 39). Plaintiff did not file a response.[3] On May 27, 2025, a "*Roseboro* Letter"[4] was sent to Plaintiff informing him that a dispositive motion had been filed in the instant action, advising him of his right to file a response, and outlining the consequences of failing to do so. (*See* Docket Entry 40.)

### B. Factual Background

Plaintiff alleges that while he was housed at Piedmont Correctional Institute ("PCI"), "[o]n October 1, 2019[,] around or about 12:59 pm, … Plaintiff was placed in handcuffs due to a facility search of canteens" by the Prison Emergency Response Team ("PERT"). (Compl. at 5.) Again, Plaintiff alleges that Defendants left Plaintiff "in handcuffs behind [Plaintiff's] back for more than 3.5 hours." (*Id.* at 4.) Plaintiff alleges that "Office Honbarrier placed the restraints on Plaintiff … and placed Plaintiff in a secured holding cell with four other inmates (co-workers)." (*Id.* at 6.) Plaintiff alleges that "Shuler monitored the holding cell refusing to take the handcuffs off Plaintiff because of the directive to leave [Plaintiff] in handcuffs." (*See id.*) Plaintiff further alleges that the incident was seen by Plaintiff's coworkers, who were "all placed in the holding cell with handcuffs on with Plaintiff being the longest." (*Id.*) Plaintiff alleges that other inmates, correctional officers, and camera footage "witness … the distress Plaintiff was in." (*Id.*)

---

[3] Plaintiff has made no filings in the matter since March 20, 2024. (*See* Docket Entry 24.) Pursuant to the Court's Local Rules, Plaintiff as a *pro se* litigant must "keep the Court and opposing parties advised as to his … current address." M.D.N.C. L.R. 11.1(b); *see also Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1988) ("A party, not the district court, bears the burden of keeping the court apprised of any changes in his mailing address."). Since Plaintiff's last filing, he has received six mailing notices, to which there has been no response. (*See* Docket Entries dated 4/25/2024, 5/13/2024, 10/21/2024, 4/15/2025, 5/8/2025, 5/27/2025.)

[4] A notice sent pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

3

Plaintiff goes on to allege that he was "seen by inside medical for swelling and numbness in his left hand, wrist, and forearm and was diagnosed with paresthesia in the left hand, wrist, and forearm." (*Id.* at 5)  Plaintiff alleges he was referred to an outside doctor who "diagnosed Plaintiff with Carpal Tunnel Syndrome which is directly caused by compression of the (A) nerve in the wrist." (*See id.*)  Plaintiff alleges that the "[o]nly medical treatment received was a prescription of Ibprophen [sic] and a medical wrist band." (*Id.*)  Plaintiff alleges that his injuries would require surgery "in the near future if my situation hasn't improved.  I didn't receive physical therapy, only advice of how to do my own physical therapy." (*Id.*)

For Plaintiff seeks declaratory relief "that the acts and omissions described [in the Complaint] violated [his] rights under the Constitution and laws of the United States." (*Id.*) Plaintiff also seeks "a preliminary and permanent injunction ordering Defendants to apologize publicly for their actions and to be retrained on how to use the instruments of restraints." (*Id.*) Plaintiff further seeks "compensatory [and] punitive damages in the amount of 1 million dollars against Defendants jointly[,] a jury trial on all issues by jury[,] Plaintiff's cost [sic] in this suit[,] and any additional relief this court deems just, proper and equitable." (*Id.*)

In their Motion for Summary Judgment, supporting Memorandum, and the attachments thereto, Defendants offer a different account of the October 1, 2019, incident. Defendants Honbarrier and Shuler have each submitted declarations affirming they were present at PCI during said incident.  (Declaration of Justin Honbarrier ("Honbarrier Decl."), Docket Entry 37-5 ¶ 2; *see also* Declaration of Johnny Shuler ("Shuler Decl."), Docket Entry 37-6, ¶ 2.)  In his Declaration, Defendant Honbarrier states that Plaintiff and other inmates were restrained with handcuffs and placed into a holding cell, in line with the "common

4

practice that while [PERT] is conducting a search of any inmate's [cell or work area], that the inmate be restrained with handcuffs while the search is completed." (Honbarrier Decl. ¶ 3.) Defendant Honbarrier states that "I was ordered to handcuff [Plaintiff] and take him to the holding cell. While restraining him, I ensured that the handcuffs were not too tight." (*Id.* ¶ 4.) Defendant Honbarrier also states that while he was away from the holding cell during the search he was "never notified during the searches of any problems with any inmates, including that inmate [sic] wanted to be removed from restraints while in the holding cell." (*Id.*) Honbarrier states that "[a]fter the search of the canteens were completed, the inmates were immediately released and normal operations resumed." (*Id.* ¶ 5.) Defendant Honbarrier finally states that "I have never wanted to harm [Plaintiff]. By completing the above actions, I was merely performing my Correctional Officer duties as ordered by my superiors." (*Id.* ¶ 6.)

In his Declaration, Defendant Shuler states that he "was the only officer assigned to monitor [Plaintiff and the other] inmates during [the PERT search]." (Shuler Decl. ¶ 3.) He states that after uncuffing Plaintiff for a restroom break, and then reattaching Plaintiff's handcuffs on his return, "[Plaintiff's] only concern was the need for better airflow in the holding cell, so I opened the cell door to improve circulation." (*Id.* ¶ 5.) Defendant Shuler further states that "[n]one of the four inmates showed or expressed discomfort with the handcuffs" while being held for their canteen search. (*Id.*) Defendant Shuler also stated that "I have never wanted to harm [Plaintiff]. By completing the above actions, I was merely performing my Correctional Officer duties as ordered by my superiors." (*Id.* ¶ 6.)

In addition to the declarations, Defendants also provided Plaintiff's publicly available incarceration summary (Docket Entry 37-2); the October 1, 2019, Shift Narrative (Docket

5

Entry 38-1 ("Shift Narrative")); a copy of the incident report (Docket Entry 38-2); and Plaintiff's health records (Docket Entry 38-3).[5]  The validity of these documents was attested to by further declarations from PCI Warden Ben Anderson (Declaration of Ben Anderson, Docket Entry 37-1), and NCDAC medical records custodian Amy LaRosa (Declaration of Amy LaRosa, Docket Entry 37-7).

Following the incident, the record indicated that Plaintiff complained of "tingling, throbbing sensations from [his] wrists down to [his] fingertips" and that he has "bruised areas on both [his] wrists." (Docket Entry 38-3 at 1.) Plaintiff attributes these injuries to being handcuffed behind his back on October 1, 2019. (*See id.* at 1) The record states that "[Plaintiff] has a small slight red area on both wrists, non tender to touch. Bilateral hand grips equal and strong." (*Id.*) A report made six weeks after the incident stated Plaintiff was diagnosed with "left carpal tunnel syndrome." (*Id.* at 3.)

## II.   **DISCUSSION**

At the outset, the Court notes that because Plaintiff has failed to file a timely response, Defendants' motion for summary judgment could be granted as a matter of course pursuant to Local Rule 7.3(k).  Where a party fails to file a timely response, the motion will be "considered and decided as an uncontested motion, and ordinarily will be granted without further notice."  Local Rule 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010).  "The possibility that Plaintiff failed to receive Defendant[s'] instant motion does not affect the propriety of the Court summarily

---

[5] Docket Entries 37-3, 37-4, and 37-8 serve as placeholders for Docket Entries 38-1, 38-2, and 38-3 respectively, which are currently under seal pending Defendants' Motion to Seal (Docket Entry 39). For the purpose of this order, the Court will refer Docket Entry 38 when referencing the sealed exhibits.

6

granting summary judgment based on Plaintiff's failure to respond."[6] *Simpson v. Hassan*, No. 1:08CV455, 2013 WL 3989552, at *2 (M.D.N.C. Aug. 2, 2013) (unpublished) (citation omitted). But, in considering a motion for summary judgment the Court must review the motion, even if unopposed, and determine—from what it has before it—whether the moving party is entitled to summary judgment as a matter of law. *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (citation omitted).

## A. Defendants' Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). If, applying this standard, the Court "find[s] that a reasonable jury could return a

---

[6] "Plaintiff's status as a *pro se* litigant does not excuse his inaction…. *pro se* litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *Simpson*, 2013 WL 3989552, at n.2 (cleaned up).

verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

Defendants move for summary judgment on several grounds. First, Defendants argue that "sovereign immunity bars Plaintiff's official capacity claims." (Docket Entry 37 at 5-6.) Defendants also argue that Plaintiff cannot meet the requirements for his excessive-force claim (*Id.* at 6-11) or his conditions-of-confinement claim. (*Id.* at 11-15).[7] Defendants argue that there was no deliberate indifference to Plaintiff, and that Defendant Shuler "is not liable as a bystander." (*Id.* at 15-17.) Finally, Defendants argue in the alternative that they are entitled to qualified immunity. (*Id.* at 17-18.) The undersigned will address each argument in turn.

### Official Capacity Claims and Eleventh Amendment Immunity

Defendants argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. (Docket Entry 37 at 5-6.) The Eleventh Amendment prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State of North Carolina is a named defendant, but also to actions against its departments, institutions, and agencies. *DeMurry v. N.C. Dep't of Corr.*, 195 N.C. App. 485, 493, 673 S.E.2d 374, 380-81

---

[7] Defendants' memorandum notes that "Undersigned Counsel does not interpret Plaintiff's Complaint or the Court's frivolity order as inclusive of a conditions of confinement claim, but to err on the side of caution, Undersigned has addressed Eighth Amendment conditions of confinement." (Docket Entry 37 at 12 n.1.) This is because Plaintiff does not specify in his Complaint what type of claim he is brining under the Eighth Amendment. However, as a *pro se* litigant, Plaintiff's claims should be "liberally construed, however inartfully pleaded[.]" *Erickson v.* Pardus, 551 U.S. 89, 94 (2007). Thus, the Court will address the conditions-of-confinement claim.

8

(2009). Additionally, in North Carolina, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Green v, Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) (citation omitted). Indeed, where Section 1983's provisions allow for suit against a person, and in suits for money damages, neither the state nor a state agency is deemed a person, thus such a claim cannot be maintained by a plaintiff against the State. *See Savage v. N. Carolina Dep't of Corr.*, No. 5:06-CV-171-FL, 2007 WL 2904182, at *5 (E.D.N.C. Sept. 29, 2007) (unpublished). Additionally, compensatory and punitive damages are unavailable in official-capacity suits under Section 1983. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

Here, by suing Defendants in their official capacities (Compl. at 2-3), Plaintiff is suing the NCDAC and the State of North Carolina. *Green*, 203 N.C. App. at 268. Neither has consented nor waived immunity; therefore, any monetary claims against Defendants in their official capacities should be dismissed.[8] *Floyd v. N. Carolina Dep't of Corr.*, No. 1:11-CV-80-RJC, 2011 WL 1499669, at *2 (W.D.N.C. Apr. 19, 2011) (unpublished) ("[T]he Eleventh Amendment protects state employees acting in their official capacities from suits for damages.") (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989)); *Kelly v. Maryland*, 267 F. App'x 209, 210 (4th Cir. 2008) (citation omitted) ("It is now well settled that a state

---

[8] Furthermore, to the extent prospective injunctive and declaratory relief is sought, (*see* Compl. at 5), such is relief is moot as Plaintiff is no longer incarcerated at PCI. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."). Moreover, having found no constitutional violation, an official capacity claim for injunctive relief also warrants dismissal. *McMillan v. C. Jones*, No. 5:14-CT-3240-H, 2016 WL 8674243, at *4 (E.D.N.C. Mar. 3, 2016).

9

cannot be sued under § 1983.").  Therefore, the undersigned recommends that Defendants'
Motion for Summary Judgment should be granted as to Plaintiff's official-capacity claims.

## Excessive Force

"The Eighth Amendment protects prisoners from unnecessary and wanton infliction of
pain." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotations
and citation omitted).  Prison officials have "an affirmative obligation to take reasonable measures
to guarantee [inmates'] safety." *Id.* (internal quotations and citation omitted).  Accordingly, when
evaluating an excessive force claim, the Court "must determine 'whether force was applied in a
good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"
*Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  To make this determination, the Court
considers two elements: "whether the prison official acted with a sufficiently culpable state of
mind (subjective component) and whether the deprivation suffered or injury inflicted on the
inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.
2008) (internal quotations and citation omitted).  The objective component:

> focuses not on the severity of any injuries inflicted, but rather on "the nature of
> the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010)
> (citing *Hudson*[, 503 U.S. at 7]); *cf. Wilkins*, 559 U.S. at 37 (explaining that the
> extent of injury suffered may indirectly "provide some indication of the amount
> of force applied").  Not every "malevolent touch by a prison guard" is
> necessarily a constitutional violation.  *Hudson*, 503 U.S. at 9.  The Eighth
> Amendment "excludes from constitutional recognition *de minimis* uses of
> physical force, provided that the use of force is not of a sort repugnant to the
> conscience of mankind." *Id.* at 10 [internal quotation and citation omitted].

*Garris v. Gober*, No. 1:10-CV-504, 2013 WL 4502261, at *1 (M.D.N.C. Aug. 22, 2013)
(unpublished), *aff'd*, 554 F. App'x 211 (4th Cir. 2014).  In other words, "there is no 'significant
injury' threshold to sustain an excessive force claim because a de minimis injury, if the product

10

of malicious and sadistic use of force, can sustain the claim." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Wilkins*, 559 U.S. at 37-38).

As for the subjective component, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 322. The Supreme Court has considered four non-exclusive factors to assist courts in determining wantonness conduct: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. In reviewing the record, "[i]f a reasonable jury could find … that correctional officers used force maliciously to punish or retaliate against an inmate, then summary judgment is not appropriate." *Dean v. Jones*, 984 F.3d 295, 302-03 (4th Cir. 2021).

In the prison context, "[c]orrections officers act with a permissible motive not only when they confront immediate risks to physical safety, but also when they attempt to preserve internal order by compelling compliance with prison rules and procedures." *Freeman v. Deas*, No. 20-7345, 2023 WL 8230805, at *2 (4th Cir. Nov. 28, 2023) (unpublished) (quotations and citation omitted); *see also Boose v. Adkins*, No. 3:18-cv-1480, 2020 WL 3086885, at *13 (S.D. W. Va. May 20, 2020) (unpublished) (explaining that "[c]ourts in this Circuit have routinely held that law enforcement and correctional officers may deploy force in response to threatening, disruptive,

11

or assaultive behavior") (collecting cases), *report and recommendation adopted*, No. CV 3:18-1480, 2020 WL 3078333 (S.D. W. Va. June 10, 2020). In addition, courts "owe officers 'wide-ranging deference' in their determinations that force is required to induce compliance with policies important to institutional security." *Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019) (ultimately quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")). Here, considering the facts in the light most favorable to Plaintiff, and considering the *Whitley* factors, there is no genuine issue of material fact as to whether the use of force by Defendants during the October 1, 2019, incident was excessive.

Considering the objective component of the Eighth Amendment excessive force analysis, alone, ambulatory restraints such as the handcuffs used by Defendants against Plaintiff "simply cannot qualify as a use of force that is 'repugnant to the conscience of mankind.' " *Holley v. Johnson*, No. 7:08CV00629, 2010 WL 2640328, at *14 n.22 (W.D. Va. June 30, 2010) (unpublished) (granting summary judgment for Defendants because "application of ambulatory restraints for 48 hours is not a use of force that offends contemporary standards of decency so as to satisfy the objective component of an excessive force claim") Plaintiff alleges he was restrained in handcuffs for "more than 3.5 hours"(Compl. at 4.), much less than the 48 hours allowed in *Holley*. Plaintiff's medical record from the day after the incident indicates that his symptoms included "wrist bruising and tingling to finger tips" and "small slight red area on both wrist[s]" (Docket Entry 38-3 at 1-

12

2.)  These symptoms, without more, do not establish a sufficiently serious injury that would show Plaintiff satisfied the objective component.  *Resper v. Baer*, No. PJM-13-2224, 2014 WL 4272027, at *7  (D. Md. Aug. 28, 2014) (unpublished) (determining that "[t]here is no objective evidence that Plaintiff was injured as a result of the application of the handcuffs" where "Plaintiff's objective injuries were at most minor consisting of a mark or swelling on his wrists.")  Plaintiff also alleges that he was diagnosed with paresthesia in the left hand, wrist, and forearm; that he was diagnosed with carpal tunnel syndrome; and that his carpal tunnel syndrome was caused by compression of a nerve in his wrist.  (Compl. at 5.)  However, Plaintiff offers no evidence that explicitly supports this causation allegation.  Instead, the record contains only a copy of a clinical encounter report wherein it is noted that Plaintiff "was diagnosed with left carpal syndrome."  (*See* Docket Entry 38-3 at 3.)

Defendants argue that Plaintiff's failure to support this allegation with expert witness testimony means that he cannot prove causation, and that the Motion for Summary Judgment should be granted on that basis.  (Docket Entry 37 at 11, 14.)  However, because four of the five cases cited by Defendants are not Section 1983 cases, and the only one that is a Section 1983 case addresses deliberate indifference, not excessive force, Defendants' argument is unavailing.  Next, Defendants correctly point out that there are other cases where expert witnesses have testified that carpal tunnel syndrome "is not caused by wearing handcuffs." (*Id.* at 14.)  However, no experts have offered testimony responsive to the specific set of facts before the Court in the instant action, and even if one had, a fact finder would not be bound by any expert witnesses' opinions and could accept or reject expert testimony in the exercise of sound judgment.  *See Helvering v. Natl. Grocery Co.*, 304 U.S. 282, 295, (1938).

13

Moreover, Courts in the Sixth Circuit have found that symptoms like those complained of by Plaintiff here are sufficient to survive a motion for summary judgment as to qualified immunity in the context of the injury component of an Eighth-Amendment excessive force claim. *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 276 (6th Cir. 2020) (stating in qualified immunity analysis that evidence of both red marks and carpel tunnel syndrome would plainly demonstrate a violation of plaintiff's clearly established rights for purposes of overcoming defendants' summary judgment motion); *Baynes v. Cleland*, 799 F.3d 600, 609 (6th Cir. 2015) (holding allegations of periodic numbness sufficient to create genuine factual dispute as to physical injury from excessively tight handcuffing); *Morrison v. Bd. of Tr. of Green Tp.*, 583 F.3d 394, 402-03 (6th Cir. 2009) (denying qualified immunity on excessively tight handcuffing claim where plaintiff alleged bruising, wrist marks, and attendant pain); *Grooms v. Dockter*, 1996 WL 26917, 76 F.3d 378, at *1 (6th Cir. 1996) (per curiam) (table) (denying qualified immunity where plaintiff was diagnosed by two specialists as suffering from carpal tunnel syndrome caused by excessively tight handcuffing).

At the summary judgment stage, Plaintiff is entitled to have all reasonable inferences drawn from the evidence in his favor, to have the credibility of his evidence as forecast assumed, to have his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him. *Henry*, 652 F.3d at 531; *Miller*, 913 F.2d at 1087. Here, the undersigned finds that the medical record showing that Plaintiff was subsequently diagnosed with carpal tunnel syndrome is sufficient evidence that could lead a reasonable jury to infer that said syndrome was caused by the handcuffing, thus creating a genuine issue of material fact. Accordingly, the

14

undersigned recommends that Defendants should not be granted summary judgment with regard to the objective component of the Eighth Amendment excessive force analysis.

Nevertheless, the undersigned recommends that Defendants' Motion for Summary Judgment should be granted because analysis of the four *Whitley* factors shows that Plaintiff has not satisfied the subjective component. *Whitley*, 475 U.S. at 321. Considering the first factor (the need for the application of force), Plaintiff was handcuffed due to a facility search of canteens by the PCI PERT, which Defendants noted was a common practice when conducting a search of an inmate's area. (Honbarrier Decl. ¶ 3); *see Frazier v. June*, No. 1:14-1091-TMC-SVH, 2015 WL 5158638, at *1 (D.S.C. July 7, 2015) (unpublished) (noting that South Carolina also employs the common practice of restraining inmates while conducting searches); *see also Berrios v. Gouff*, No. 1:22-CV-1651-LKG, 2023 WL 3604742, at *5 (D. Md. May 23, 2023) (unpublished) (noting that Maryland also employs said practice). Additionally, it is reasonable for Defendants to use restraints when placing inmates together in a holding area. *See Wright v. McFadden*, No. 5:18-263-TMC, 2019 WL 2912225, at *3 n.2 (D.S.C. July 8, 2019) (unpublished) (collecting cases that "have recognized that commingling restrained inmates and unrestrained inmates could constitute deliberate indifference to the restrained inmate's safety in violation of that inmate's constitutional rights[.]"). Since Defendants' conduct was a common practice and was reasonable, the first factor favors Defendants.

Considering the second factor (the relationship between the need for force and the amount of force used), Defendants applied only handcuffs, not full restraints, and did so without the use of force and without applying the handcuffs too tightly (*see* Docket Entry 37 at 7, 16; Honbarrier Decl. ¶ 4; Shuler Decl. ¶ 5). *Bingham v. Garland*, No. 1:19-CV-00139-MR,

15

2021 WL 2321674, at *6 (W.D.N.C. June 7, 2021) (unpublished). Additionally, the Shift Narrative states that Plaintiff was only held for the canteen search for two hours, not "3.5 hours" as Plaintiff alleges. (*See* Docket Entry 38-1.) Additionally, more restrictive means of restraints than the handcuffs used on Plaintiff "such as restraint chairs … have repeatedly been found to be constitutional when used appropriately." *Gilcher v. Smith*, No. 1:23-CV-00192-MR, 2024 WL 5112753, at *6 (W.D.N.C. Dec. 13, 2024) (citations omitted). Thus, the second factor favors the Defendants.

Considering the third factor (the extent of any reasonably perceived threat that the application of force was intended to quell), Plaintiff was placed in restraints in order to enable prison officials to safely conduct a search for suspected contraband. (*See* Docket Entry 38-2.) "Possession of contraband within the prison facility creates a cognizable danger for both inmates and prison officials." *McMillan*, 2016 WL 8674243, at *3. Having been made aware that there was "possible fentanyl inside the unit[,]" (Docket Entry 38-1 at 2), before conducting searches of all inmates' person and property (Docket Entry 38-2 at 1), Defendants encountered a situation that "presented a need for continued force to control" Plaintiff. *Carter v. Farmer*, No. 7:12CV00008, 2012 WL 3912765, at *8 (W.D. Va. Sep. 7, 2012). Plaintiff offers no argument or evidence to dispute Defendants' narrative. Thus, the undersigned finds that there is no genuine issue of material fact as to whether Defendants' perception of the threat Plaintiff could pose to Defendants and other inmates while officers were searching for contraband was reasonable; thus, the third factor favors Defendants.

Considering the fourth factor (any efforts made to temper the severity of the response), Defendants followed their common practice, and declared they were responsive to all requests

from Plaintiff they were aware of. (Honbarrier Decl. ¶3; Shuler Decl. ¶ 5.) "Compliance with the [practice] would provide powerful evidence that the application of force was tempered and that the officers acted in good faith in imposing the restraints." *See Williams v. Benjamin*, 77 F.3d 756, 766 (4th Cir. 1996) (citations omitted). Defendants placed Plaintiff under restraints for the purpose of the canteen search and removed them once complete (Shuler Decl. ¶ 5), making the use of restraints "brief, minor, tailored to gain Plaintiff's compliance, and terminated once that compliance was achieved." *Jackson v. Daniels*, No. 5:17-CT-3222-BO, 2020 WL 865415, at *3 (E.D.N.C. Feb. 20, 2020). Again, Plaintiff offers no evidence to dispute Defendants' narrative. Thus, the fourth factor also favors Defendants.

Since the four factors favor Defendants, Plaintiff has not satisfied the subjective element of his Eighth Amendment claim. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment should be granted as to Plaintiff's Eighth Amendment Excessive Force claim.[9]

_____

[9] The Court reached a similar conclusion in *Robinson* I, which, again, alleged facts identical to those alleged in the instant action:

> The only evidence in the record indicates the handcuffs were applied in keeping with routine practices of [PERT], and the use of restraints was reasonable …. Plaintiff and the other inmates were only cuffed for the period of the search, and there is no evidence the cuffs were place[d] with an intention to cause harm. Plaintiff even states that when he was no longer in the holding cell and he directly asked Defendant to remove his cuffs, Defendant [Frick] did so right away. … Officer Honbarrier's declaration and Officer Shuler's statement in the incident report supports Defendant's declaration that he was never alerted to any problem or concerns from the inmates during the time of the search. Therefore, no reasonable jury could find with respect to Defendant that any actions he took were done "maliciously or sadistically to cause harm." *Hudson*, 503 U.S. at 7. Plaintiff cannot establish the necessary subjective component of the Eighth Amendment excessive force analysis, and having so found, Defendant is entitled to summary judgment on the excessive force claim.

*Robinson* I, at *7 (cleaned up).

## Conditions of Confinement

Claims by prisoners against prison officials challenging their conditions of confinement fall under the Eighth Amendment. *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) (citations omitted). The Eighth Amendment requires that prison officials "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "To the extent that such conditions [in prison] are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The constitutional limit on prison conditions is that they do not violate contemporary standards of decency or create "the unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991) (internal quotations and citations omitted); *see also Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

Eighth Amendment conditions-of-confinement claims are evaluated by a two-part test. *Porter*, 923 F.3d at 955. The first part requires that "the deprivation alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. The deprivation must be one that puts the inmate "under conditions posing a substantial risk of serious harm," the kind of conditions that deny the inmate "the minimal civilized measure of life's necessities." *Id.*; *see also Rhodes*, 452 U.S. at 347. The second part requires that prison officials "possessed a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297. "That state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations omitted). A claim of deliberate indifference requires "that the official in question subjectively recognized a substantial risk of harm" and that "the official actually *must have* recognized that his actions were insufficient." *Parish ex rel. Lee*

18

*v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citing *Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001)) (emphasis in original). A medical need serious enough to give rise to a constitutional claim must place the inmate at a substantial risk of harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *Farmer*, 511 U.S. at 832-35. While an excessive force claim does not require showing of a significant injury, a conditions-of-confinement claim does. *Jeter v. Smith*, No. CIV.A. 9:11-1149-JFA, 2012 WL 1570079, at *7 (D.S.C. Feb. 24, 2012) (unpublished) (collecting cases), *report and recommendation adopted*, No. 9:11-CV-1149-JFA, 2012 WL 1570076 (D.S.C. May 3, 2012).

Here, as to the first part of the test, Plaintiff has failed to show that Defendants created an objectively, sufficiently serious deprivation or denial that would support a conditions of confinement claim. *See, e.g.*, *Holley*, 2010 WL 2640328, at *12-15 (reasoning that "severe muscle pain and stiffness lasting for ten days," where plaintiff could change position, and injury to his wrist from handcuffs that did not require medical treatment and subsided completely within days, did not render the use of ambulatory restraints for a 48-hour period, even in cold cell, violative of Eighth Amendment); *see also Simpson v. Terrell*, No. 2:23-CV-0064-SCJ-JCF, 2023 WL 9105380, at *5 (N.D. Ga. Oct. 30, 2023) (unpublished) ("[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal"), *report and recommendation adopted in part, rejected in part on other grounds*, No. 2:23-CV-0064-SCJ, 2023 WL 9105456 (N.D. Ga. Dec. 5, 2023) (affirming ruling that plaintiff's allegations of being placed in excessively tight handcuffs failed to state a sufficient conditions-of-confinement claim).

Moreover, courts in the Fourth Circuit have considered carpal tunnel syndrome not to be objectively serious for purposes of Eighth Amendment analysis. *See, e.g.*, *McGugan v. Clarke*,

19

20 CV 0303, 2021 WL 4429191, at *4 (W.D. Va. Sept. 27, 2021) (unpublished) ("[Plaintiff]'s allegations regarding a carpal tunnel injury that caused him to suffer great pain in his wrist, and that his hand does not work properly, likewise do not allege a serious medical condition"); *Tensley-Bey v. Virginia*, No. 00 CV 1449, 2002 WL 32615105, at *4 (E.D. Va. Apr. 9, 2002) (unpublished) ("[S]ymptoms of carpal tunnel syndrome and bursitis do not appear to rise to the level of a serious medical condition").[10]

Plaintiff also fails to make a sufficient showing under the second part of the test, which examines whether Defendants showed "deliberate indifference" to Plaintiff's health or safety. Plaintiff's alleged injuries from his time spent in restraints were not long enough or as severe as those recognized by the Supreme Court to create an Eighth Amendment violation. *See Hope v. Pelzer*, 536 U.S. 570 (2002) (finding that inmate's allegations of being handcuffed to hitching post in hot sun for seven hours in awkward position with limited access to bathroom facilities and drinking water, as punishment after being disruptive during a work detail, satisfied subjective and objective elements of Eighth Amendment conditions claim). Compared to *Hope*, Plaintiff only alleges he was handcuffed for half the time (Compl. at 5), while Defendant Shuler stated that Plaintiff had access to bathroom privileges and that he opened the door of the holding cell at Plaintiff's request to help with adequate heating. (Shuler Decl. ¶¶ 4-5).

_____

[10] *See also Cantrell v. Strong*, No. 3:21-CV-15, 2022 WL 3574302, at *9 (N.D.W. Va. May 19, 2022) (unpublished) ("Carpal tunnel syndrome and a rotator cuff injury were not serious medical conditions") (citing *Webb v. Prison Health Services*, 1997 WL 298403 (D. Kansas May 7, 1997) (unpublished)), *report and recommendation adopted*, No. 3:21-CV-15, 2022 WL 2752593 (N.D.W. Va. July 14, 2022); *Shepheard v. Huttonsville Corr. Ctr.*, No. 3:22-CV-55, 2022 WL 22877305, at *5 (N.D.W. Va. Dec. 19, 2022) (unpublished) (same); *Glaspell v. Paugh*, No. 3:19-CV-99, 2022 WL 885652, at *6 (N.D.W. Va. Feb. 22, 2022) (unpublished) (same), *report and recommendation adopted*, No. 3:19-CV-99, 2022 WL 884276 (N.D.W. Va. Mar. 24, 2022); *Garcia v. McLean*, No. 3:16-CV-161, 2018 WL 1788072, at *13 (N.D.W. Va. Feb. 22, 2018) (unpublished) (same), *report and recommendation adopted*, No. 3:16-CV-161, 2018 WL 1785481 (N.D.W. Va. Apr. 13, 2018).

In *Hope*, Plaintiff was taunted to suggest a wanton infliction of pain, whereas here, Defendants state that they were never aware of any problems with Plaintiff's handcuffs. (Honbarrier Decl. ¶ 4, Shuler Decl. ¶ 5.) Defendants argue that they "were not made aware of any issues from the canteen workers, nor did they receive any requests to remove restraints" and that "after the searches concluded, none of the canteen workers reported any injuries." (Docket Entry 37 at 4; Docket Entries 38-1, 38-2.) Defendants additionally state that they do not "hold any feelings of ill-will towards Plaintiff" and that they were "merely performing [their] Correctional Officer duties as ordered by [their] superiors[,]" not inflicting punishment on Plaintiff. (Honbarrier Decl. ¶ 6; Shuler Decl. ¶ 6); *see Hope*, 536 U.S. at 570. Thus, Plaintiff has not shown that Defendants acted with "deliberate indifference" towards him. In sum, because Plaintiff fails to prove both elements of his conditions-of-confinement claim, the undersigned recommends that the Motion for Summary Judgment on said claim should be granted as well.

**Bystander Liability**

The Fourth Circuit has held that "bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's County, Md.*, 302 F.3d 188, 203 (4th Cir. 2002). Thus, "an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204 (footnote omitted).

Here, as discussed above, there is no constitutional violation with respect to Defendants' treatment of Plaintiff in placing Plaintiff in handcuffs in a holding cell while conducting a canteen search for contraband. With no underlying constitutional violation

21

bystander liability fails. *See id.*; *see also Dodson v. Prince George's Cnty.*, No. JKS 13-2916, 2016 WL 67255, at *3 (D. Md. Jan. 6, 2016) (unpublished) ("Because the excessive force claim fails, the failure to intervene claim also fails."); *see also Marshall v. Odom*, 156 F. Supp. 2d 525, 531 (D. Md. 2001) ("In the absence of any underlying use of excessive force against … [p]laintiff, liability cannot be placed on … [defendant] for failing to intervene…."); *see also Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 420-21 (4th Cir. 1996) (holding that claim for supervisory liability was inapplicable when jury rejected plaintiff-appellant's claim of excessive force).

## Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. (Docket Entry 37 at 17-18.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010) (citation omitted).

Here, Plaintiff has not demonstrated a violation of a constitutional right; as shown above, the undersigned recommends a finding that Defendants did not violate Plaintiff's Eighth-Amendment rights by using excessive force or subjecting Plaintiff to inhumane

22

conditions of confinement during the October 1, 2019, incident. Therefore, the undersigned recommends a finding that Defendants are entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (holding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

## Injunctive Relief

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *see also Head v. United States*, No. GJH-22-238, 2023 WL 2163177, at *2 (D. Md. Feb. 22, 2023) (unpublished) (holding that plaintiff's transfer to different facility rendered his claims for injunctive relief moot). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he [was] subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007).

A narrow exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d at 289 (internal quotation marks and citations omitted).

23

Here, Plaintiff was transferred out of PCI (where the alleged underlying constitutional violations took place) and has since been housed in Craven Correctional Institution, Franklin Correctional Center, and Pender Correctional Institution. (*See* Docket Entries 5, 8, 40; *see also* Compl. at 2, 6.) Thus, his claims for declaratory and injunctive relief are moot. Plaintiff has provided no indication that the complained-of conduct is continuing following his transfer from PCI. *Holbrook v. Aldridge*, No. 3:21-CV-00170, 2022 WL 4000718, at *14 (S.D.W. Va. Aug. 1, 2022) (unpublished), *report and recommendation adopted*, No. CV 3:21-0170, 2022 WL 3994721 (S.D.W. Va. Aug. 31, 2022). Nor are the claims here capable of repetition, yet evading review, since Plaintiff would have the opportunity to re-initiate an action for injunctive relief if he were returned to PCI. *Tyler v. Poole*, No. 1:17-CV-1142, 2020 WL 758116, at *2 (unpublished) (citing *Rendelman*, 569 F.3d at 186). Therefore, the undersigned recommends that Plaintiff's claims for declaratory and injunctive relief should be dismissed. *Id.*

## B. Defendants' Motion to Seal

Finally, Defendants have filed a motion requesting "this Court to … seal Exhibits B and C referred to in Exhibit 1 Warden Ben Anderson's Declaration and Exhibit A referred to in Exhibit 4 Amy LaRosa's Declaration." (Docket Entry 39 at 1.) Defendants argue that "these documents contain confidential prison facility shift narratives, … incident reports, and Plaintiff's confidential medical records. … [F]ailure to seal would embarrass or reveal confidential information of Plaintiff and risk prison security, revealing confidential and protected information from NCDAC." (*Id.* at 1-2.) Defendants also argue their "ability to support their motion would be prejudiced" without a motion to seal. (*Id.* at 2.)

24

Unredacted copies of said documents have been filed under seal and have been scrutinized by the Court. (Docket Entry 38.) There has been a reasonable opportunity for interested parties to address the matter. Plaintiff has not objected to, joined in, or otherwise responded to the Motion to Seal. Defendants have filed a checklist pursuant to the Local Rules. *See* M.D.N.C. LR 5.4.

Because Plaintiff's prison medical records, incident report, and prison facility shift narrative are submitted in connection with the Motion for Summary Judgment, the documents are judicial records, and the right of access is protected under the First Amendment. *Doe v. Pub. Citizen*, 749 F.3d 246, 267-68 (4th Cir. 2014). Therefore, granting of the Motion to Seal is proper only if a compelling government interest is shown, and the sealing of the documents is narrowly tailored to meet the compelling interest. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). In considering the issue, the Court must:

> [W]eigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

*Va. Dept. of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). A motion to seal cannot rest on conclusory allegations but must "present specific reasons in support of its position." *Id.* at 575.

With respect to Plaintiff's medical records, Defendants assert they must be kept private because the documents contain "highly sensitive and confidential records." (Docket Entry 39 ¶¶ 1-2.) This statement is the entirety of the explanation presented by Defendants to support

25

sealing the records. The Court recognizes there is a government interest in protecting medical information. *See Fulp v. Columbiana Hi Tech, LLC*, No. 1:16-CV-1169, 2018 WL 1027159, at *10 (M.D.N.C. Feb. 21, 2018). However, there is no blanket exception to the First Amendment right to access for medical records, and there are times unsealing medical records is appropriate. *See, e.g., Musgrove v. Moore*, No. 1:19-CV-164, 2022 WL 19977408, at *2 (M.D.N.C. Apr. 20, 2022). The submitted medical records are limited to three pages of information, all relevant to the injuries alleged in the Amended Complaint. (*See* Compl. at 5.) Moreover, the records provide minimal information beyond that already shared by Plaintiff in the Amended Complaint and by Defendants in support of the Motion for Summary Judgment. (*See* Docket Entry 2 at 5; Docket Entry 37 at 4.) Therefore, any privacy concerns are diminished. Consequently, the undersigned cannot find the need to seal the medical records has been shown to be compelling, and orders that Defendants' motion to seal the medical records is denied.

With respect to Defendants' incident report and shift narrative, Defendants assert the information is confidential and that the failure to seal would create security risks. (Docket Entry 39 at 2.) To the extent Defendants assert institutional and inmate security as a compelling government interest, "such concerns may constitute overriding interests that outweigh the presumption of public access to judicial records[.]" *Ford v. Hooks*, No. 1:19CV444, 2021 WL 879966, at *4 (M.D.N.C. Mar. 9, 2021) (unpublished) (citing cases holding that inmate and prison safety qualify as a "compelling government interest" under the First-Amendment standard determining whether the granting of a motion to seal is proper); *see also Dontell v. Safford*, No. 9:22-CV-01641-BHH-MCH, 2024 WL 4137314, at *2 (D.S.C. Feb. 1, 2024) (unpublished)

("The security interests of HCSO Defendants, and more specifically of the Detention Center, 'heavily outweigh the public interests in access' to these exhibits"). "However, even when a compelling interest exists, non-disclosure constitutes the proper course only when the proposed seal or redactions satisfy the First Amendment's narrow-tailoring requirement." *Hooks*, 2021 WL 879966, at *4 (citing *Stone v. University of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)).

Here, the sealing that Defendants seek is narrowly tailored. Defendants do not seek to seal the entire summary judgment record, but only three of the eight exhibits submitted by Defendants, with limited references only to those central to the issues at hand. (Docket Entry 37 at 3, 4, 9.) However, by referring to the facts and information contained in the incident and shift narrative in their motion for summary judgment, which is unsealed, Defendants have, in effect, already openly filed parts of these documents into the record (*see id.*). *See Dale v. FNU Barnes*, No. 1:23CV373, 2024 WL 4416440, at *12 (M.D.N.C. Oct. 4, 2024). Furthermore, as to whether the documents implicate the compelling security interests, the incident report and shift narrative "do not reveal prison plans, disclose state issued cell phone numbers, or otherwise appear to include security details." *Dale*, 2024 WL 4416440, at *12. Moreover, it is also unclear that sealing the documents is the required solution, considering alternatives such as redaction or in-camera viewing. *See Hooks*, 2021 WL 879966, at *5 ("Such resolution constitutes a less drastic alternative to the Sealing Motion's … proposal and strikes the appropriate balance between the public's right of access and the interest in inmate safety."). Therefore, the undersigned orders that Defendants' motion to seal the incident report and the shift narrative is denied.

III.    <u>**CONCLUSION**</u>

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 36) should be **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal Exhibits (Docket Entry 39) is **DENIED**. The Court directs the Clerk to unseal the records filed at Docket Entry 38.


                                    _____/s/  Joe L. Webster_____
                                        United States Magistrate Judge


July 18, 2025
Durham, North Carolina